UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

PERSHING LLC

VERSUS

WANDA BEVIS ET AL

CIVIL ACTION

NO. 13-672-JJB-RLB

**<u>RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

This matter is before the Court on a Motion (doc. 11) for Preliminary Injunction brought by Plaintiff, Pershing LLC ("Pershing"). Defendants have filed an opposition (doc. 35), to which Pershing has filed a reply (doc. 38). Defendants have filed a Supplemental Memorandum (doc. 42) in Opposition. The matter was heard by the Court on April 24, 2014. After the presentation of arguments, the Court took the matter under advisement. Jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, Pershing's motion is GRANTED.

**I.     Background**

Pershing has filed a motion for preliminary injunction for declaratory and injunctive relief. (Doc. 11). Pershing would like this Court to declare that it has no obligation to arbitrate the Defendants' claims and to enjoin the Defendants from attempting to join Pershing in any further arbitration proceedings. This request arises out of a pending arbitration in the matter of *Kiebach, et al. v. Pershing LLC*, FINRA Case No. 13-01692 (the "arbitration proceeding") being conducted under the authority of a Financial Industry Regulatory Authority ("FINRA") panel. The arbitration proceeding concerns Pershing's involvement in, and therefore potential liability for, a criminal Ponzi scheme orchestrated by R. Allen Stanford.

The Defendants allege that the Ponzi scheme was effectuated by the use of Certificates of Deposits ("CDs") sold to the Defendants by Stanford International Bank, Ltd. ("SIB"), an Antiguan bank. While Pershing maintains that it, as the clearing agent for Stanford Group

1

Company ("SGC") tasked with performing administrative functions, played a minor role in the Ponzi scheme, the Defendants assert that Pershing's role was essential to the scheme's success. There are approximately 100 claimants in the pending FINRA arbitration including the 16 Defendants named in the suit before the Court. Pershing only objects to the inclusion of the claims of the 16 Defendants in the present matter because there is neither a written agreement requiring arbitration, nor are the Defendants "customers" of Pershing as required under FINRA rules.

The Defendants filed a motion to dismiss arguing that the Court lacked subject matter jurisdiction to determine whether Pershing is obligated to arbitrate their claims. (Doc. 28). Instead, Defendants argued that this determination was one reserved to the FINRA panel assembled to oversee the arbitration. Relying upon well-settled Fifth Circuit and Supreme Court jurisprudence, the Court held that it possessed subject matter jurisdiction to determine the issue of arbitrability and denied the Defendants' motion to dismiss. (Doc. 33) The Defendants also filed a Motion for Leave to Conduct Discovery in Connection with the Preliminary Injunction. (Doc. 13). The Court denied the motion, finding that discovery would be futile in light of the Defendant's proffered justifications, and that in any event, the requested discovery was overly broad and burdensome. (Doc. 27). At the hearing, the Defendants renewed their objections to the Court's rulings. The Court maintained its rulings finding that there was no reason presented to warrant reconsideration.[1] With its prior rulings undisturbed, the Court is ready to consider the propriety of issuing a preliminary injunction.

---

[1] The Court will take this opportunity to briefly address the Defendants' request for discovery. The Defendants contend that discovery is required (1) to determine the relationship between Pershing and other Stanford entities and brokers; and (2) to discover possible arbitration agreements between Pershing and other Stanford entities. They aver that the information produced could establish that they can compel Pershing to arbitrate under FINRA Rule 12200 or demonstrate that an intertwined theory of equitable estoppel is applicable to this case. The Court again finds that such discovery is unnecessary. The relationship between Pershing and other Stanford entities is irrelevant because assuming that the Defendants were customers of Stanford entities, such Stanford entities cannot be an "associated

## II. Discussion
### A. Preliminary Injunction Standard

To obtain a preliminary injunction, the plaintiff must show 1) that there is a substantial likelihood that he will succeed on the merits, 2) that there is a substantial threat that the he will suffer irreparable injury if the district court does not grant the injunction, 3) that his threatened injury outweighs the threatened injury to the defendants, and 4) that granting the preliminary injunction will not disserve the public interest. *See Walgreen Co. v. Hood,* 275 F.3d 475, 477 (5th Cir. 2001).

### B. Likelihood of Success on the Merits

Under FINRA rules,

Parties must arbitrate a dispute under the Code if:

> Arbitration under the Code is either:
> (1) Required by a written agreement, or
> (2) Requested by the customer
>
> The dispute is between a customer and a member or associated person of a member; and
>
> The dispute arises in connection with the business activities of the member or the associated person…

FINRA, *Code of Arbitration Procedure for Customer Disputes*, Rule 12200. Pershing argues that the Defendants have failed to establish that they are entitled to arbitration under Rule 12200 because they have not produced a written agreement executed by both parties requiring

---

person" as a matter of law. *See Ruling*, Doc. 27, at 3 ("After duly considering the submitted briefs and reviewing the applicable case law, the Court finds that the discovery requested to determine Pershing's level of influence is unnecessary given that Pershing and Stanford affiliates cannot be "associated persons" as a matter of law."). Though the Court more fully addresses the Defendants' intertwined theory of equitable estoppel *infra*, it is enough to say here that the Court finds it unnecessary to delay a decision on the propriety of issuing a preliminary injunction on the basis of possible agreements between Pershing and other Stanford entities when Pershing has provided evidence that it only signed an agreement with SGC and the Defendants have failed to provide any evidence even tending to contradict this evidence. *See Decl. of Nancy Newcome*, Plaintiff's Hearing Ex. 1, at ¶ 7. In sum, while the evidence sought may be pertinent to a determination on the merits of the Defendants' claims, it is unnecessary to the Court's threshold determination of whether such claims are subject to arbitration.

arbitration, which the Defendants admit. Pershing further argues that the Defendants are not "customers" of Pershing because there is no contractual or direct relationship between Pershing and any of the Defendants. After review, the Court finds that the Defendants cannot compel arbitration pursuant to FINRA Rule 12200 because there is no written agreement requiring arbitration and the Defendants are not "customers" of Pershing.

While FINRA has not specifically defined the term "customer," Courts have defined it as "one, not a broker or a dealer, who purchases commodities or services from a FINRA member [.]" *UBS Financial Servs. Inc. v. Carilion Clinic*, 706 F.3d 319, 325 (4th Cir. 2013) (citing cases that fully support this definition). This definition appears to require a direct relationship, contractual or otherwise. This direct relationship is not herein presented. To demonstrate this point, Pershing has produced the Declaration of Nancy Newcome ("Newcome"), a Director in the Client Service Delivery Department of Pershing. *Decl. of Nancy Newcome*, Plaintiff's Hearing Ex. 1. In it, she describes the numerous documents that a customer of Pershing would receive and should have in their possession once their accounts were introduced to Pershing for clearing services such as a Client and Margin Agreement and periodic FINRA Rule 4311 disclosures and monthly account statements. *Id.* at ¶¶ 10 & 11. The Defendants have failed to produce any of these documents. Moreover, two searches of Pershing's records failed to reveal any record of the Defendants' accounts. *Id.* at ¶¶ 12 & 13. This lack of proof is fatal to any contention that the Defendants were Pershing's customers. *See Raymond James Financial Servs., Inc. v. Cary*, 709 F.3d 382, 387 (4th Cir. 2013) (affirming the district court's finding that the appellants were not customers when there was no purchase of a service, creation of an account, or personal contact with the FINRA member).

Without documentation to demonstrate that Pershing and the Defendants agreed to arbitrate their claims or to establish a direct customer relationship between to the two parties, the prerequisites to arbitration under Rule 12200 cannot be met. Accordingly, the Defendants cannot compel Pershing to arbitrate their claims pursuant to Rule 12200.

The Defendants argue that there are two theories that will allow them, as non-signatories to a contract containing an arbitration provision, to compel Pershing to arbitrate their claims: (1) third party beneficiary and (2) equitable estoppel. The Court finds that arguments predicated on both theories are unavailing.

Under Louisiana law, the party claiming a third party beneficiary status bears the burden of proving that they are entitled to such a status. *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 48 (5th Cir. 2010). To satisfy this burden, the Defendants must demonstrate the "contract manifests a clear intention to benefit the third party." *Id.* Here, the Defendants claim that they are third party beneficiaries to the agreements between Pershing and FINRA and Pershing and SGC. They assert that both sets of agreements contain arbitration provisions which could inure to their benefit. This assertion is misguided. First, after reviewing the membership agreement between Pershing and FINRA, the Court is unable to find any mention of arbitration, let alone, agreements to arbitrate.[2] *See FINRA Membership Agreements*, Defendants' Hearing Ex. 5-8. As to the Clearing Agreement executed by Pershing and SGC, while there is an arbitration agreement clause therein, a separate clause to the agreement belies

---

[2] To the extent that the Defendants are arguing that the Membership Agreements' Certification Clause, in which Pershing agreed to *inter alia* be bound by FINRA rules, is an arbitration provision that inures to their benefit, the Court finds this argument to be based upon specious reasoning. Pershing has agreed under FINRA rules to arbitrate claims if certain perquisites to arbitration are met; not to arbitrate any claim brought by any party regardless of the tenuous connection of the claim or party to Pershing's business. To find otherwise would lead to the absurd conclusion that a FINRA member's membership alone would require arbitration. *See Morgan Keegan & Co. v. Shadburn*, 829 F.Supp.2d 1141, 1149-50 (M.D. Ala. 2011). "Such a result would 'do significant injustice to the reasonable expectations of [FINRA] members' and 'would contravene the core principle ... that 'an obligation to arbitrate can be based only on consent.'" *Id.* at 1150 (citations omitted).

the Defendants' averment that they are third party beneficiaries to the clearing agreement as the plain language of the clause disclaims any third party rights. *See Clearing Agreement,* Plaintiff's Hearing Ex. 3, at §29.9 ("This agreement is between the parties hereto and is not intended to confer any benefits on third-parties, including but not limited to, customers of Broker."). Accordingly, any claim that the Defendants are third party beneficiaries to Pershing's agreements with FINRA or SGC will likely fail.

Finally, "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based upon…equitable estoppel if the relevant state contract law so permits." *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, No. 12-60922, 2014 WL 1343608, *7 (5th Cir. Apr. 4, 2014). While the Defendants do not cite any Louisiana state law recognizing the use equitable estoppel under these circumstances, this alone is not fatal to their argument. Nevertheless, the Defendants' cannot rely upon the principle of equitable estoppel as it is inapplicable to the facts of this case.

The Defendants aver that their claims are so "intertwined" with the relevant parties and claims involved in the arbitration proceeding that Pershing is estopped from declining to arbitrate the Defendants' claims. This form of equitable estoppel works to prevent "a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 360 (5th Cir. 2003) (citation omitted). The intertwined nature of claims is not dispositive. *Id.* at 361 ("The simple fact that [the claims] are inextricably intertwined…is insufficient, standing alone, to justify the application of equitable estoppel [.]"). Instead, "[t]he linchpin for equitable estoppel is equity—fairness." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). The application

of equitable estoppel works to prevent the inequitable result that would occur if a party was able to use a contract as both a sword and shield. Simply put, equitable estoppel prevents a party from reaping the benefits of an agreement and then attempting to avoid the burdens that it may impose. *See Bridas*, 345 F.3d 361. These simply are not the facts of this case.

Equitable estoppel is not necessary to avoid the inequitable result discussed in *Bridas*. Ironically, the application of equitable estoppel would produce an inequitable result as the agreement between Pershing and SGC upon which the Defendants rely to support this application of equitable estoppel explicitly disclaims any obligation to third parties. Therefore, application of equitable estoppel upon this basis would "threaten to overwhelm the fundamental premise that a party cannot be compelled to arbitrate a matter without its agreement." Contravention of this fundamental policy is not warranted by the facts of this case.

Defendants also contend that the "direct benefits" version of estoppel applies. The Defendants aver that Pershing "directly benefited" from contracts to which the Defendants and SGC were signatories. "Direct benefits estoppel applies when a nonsignatory 'knowingly exploits the agreement containing the arbitration clause.'" *Bridas*, 345 F.3d at 361-62; *see also Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006) ("Direct benefit estoppel 'involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status, but then, during litigation, attempt to repudiate the arbitration clause in the contract.'"). For direct benefit estoppel to apply, the non-signatory must bring suit premised in part on the agreement. *Id.* at 362 (recognizing that courts will only seriously consider applying direct benefits estoppel when a non-signatory has brought suit under the agreement against a signatory). Here again, these are not the facts of this case. Pershing, the non-signatory, has not sued the Defendants under any agreement and therefore has

7

not "exploited" an agreement to any degree, let alone a degree which would warrant the application of this version of estoppel. *Id.*

In sum, Pershing has demonstrated that there is a substantial likelihood that they will prevail on the merits. FINRA Rule 12200 does not provide an avenue for the Defendants, as non-customers of Pershing that lack a written agreement to arbitrate their claims, to compel arbitration. Moreover, the Defendants' arguments rooted in equitable theories of contract law are unavailing.

### C. Remaining Preliminary Injunction Prerequisites

Pershing correctly asserts that the other prerequisites for a preliminary injunction are met. First, courts have consistently found that a party will suffer irreparable harm if it is forced to participate in an arbitration where the dispute is not subject to an agreement to arbitrate. *See Credit Suisse Secs. (USA) LLC v. Sims*, Civil Action No. H-13-1260, 2013 WL 5530827, *3 (S.D. Tex. Oct. 4, 2013) (citing cases therein); *see also Morgan Keegan & Co. v. Shadburn*, 829 F.Supp.2d 1141, 1153 (M.D. Ala. 2011) (citation omitted) ("Courts have concluded that a movant suffers irreparable harm when it is 'forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable'"). Given that Pershing has established a likelihood of success on the merits that it is not obligated to arbitrate the Defendants' claims, it has demonstrated that it will suffer irreparable harm if forced to arbitrate.

Second, the balance of the hardship weighs in Pershing's favor. While joining the pending arbitration would prove less economically burdensome for the Defendants, the burden of potential litigation costs in state or federal court does not outweigh the irreparable harm that Pershing would suffer if it was forced to arbitrate the Defendants' claims. "[I]n light of

[Pershing's] showing of a substantial likelihood of success that it cannot be forced to arbitrate the underlying dispute and the irreparable injury that flows from that forced arbitration, the harm to [Pershing] clearly outweighs the harm to [the Defendants]." *Shadburn*, 829 F.Supp.2d at 1153. Accordingly, a balancing of the harms weighs in favor of issuing a preliminary injunction.

Finally, compelling arbitration where Pershing has not agreed to do so would be in contravention of public policy. While there is a public policy favoring the arbitration of claims, to do so under the present circumstances "would be to engage in naked coercion independent of any sound basis in law" and would further "undermine the longstanding principles that arbitration is a consent-based process through which parties can decide for themselves where and how to resolve a specific set of potential disputes." *Raymond James Financial Servs.*, 709 F.3d at 388.

Accordingly, Pershing has satisfied the remaining preliminary injunction prerequisites.

### III.  Conclusion

For the reasons stated herein, the Court GRANTS Pershing's Motion (doc. 11) for Preliminary Injunction. The Defendants are ENJOINED from proceeding with the FINRA arbitration captioned *Kiebach, et al v. Pershing LLC*, FINRA Case-No. 13-01692, pending further order of this Court.

Pershing shall file a proposed order in conformity herewith after attaining approval from the Defendants as to form within 7 days of the date of this ruling.

Signed in Baton Rouge, Louisiana on May 6, 2014.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**